[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  11-14032

_____

D.C. Docket No. 1:04-cv-01928-CC

TABITHA A. JONES,
ALLISON JONES, JR.,
CAMARIO COLLINS JONES,
ZECOSHA JONES,
ALOJUWAN JONES,
KHALIQ ALEXANDER JONES,
ESTATE OF ALLISON JONES,

Plaintiffs-Appellants,

versus

MARILYN T. STONE,
CHARLES E. FRYE,

Defendants-Appellees,

CITY OF ATLANTA,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 16, 2013)

Before TJOFLAT, CARNES, and JORDAN, Circuit Judges.

JORDAN, Circuit Judge:

This appeal arises, as our cases sometimes do, out of tragic circumstances: after crashing his car into a guard rail in East Point, Georgia, Allison Jones was shot and killed during a post-wreck encounter with police. Mr. Jones' estate, his widow, and his children (collectively, "the Plaintiffs") sued the two officers involved, Marilyn Stone and Charles Frye, and their employer, the City of Atlanta, in federal district court. After an earlier opinion of this Court, a summary judgment order, and three jury trials narrowed the case, the district court granted the officers' motion for judgment as a matter of law based on state official immunity. In this appeal, the Plaintiffs contend that the district court failed to follow our earlier opinion—in the process going against the law of the case—and assert a number of errors based upon that failure. They also argue that the district court made several prejudicial evidentiary mistakes in the third trial. Following oral argument, we find no error and affirm.

## I.

The Plaintiffs' lawsuit alleged that Officers Stone and Frye violated Mr. Jones' constitutional rights by using excessive force during their encounter with him. Based on that allegation, the Plaintiffs asserted 42 U.S.C. § 1983 claims

2

against the officers and the City, as well as state law claims including negligence, wrongful death, and negligent supervision. The district court granted summary judgment in favor of the officers and the City on the § 1983 claims, holding that the officers had acted reasonably in self defense and therefore had not violated Mr. Jones' constitutional rights, that they were due qualified immunity, and that the City was not liable for their conduct. After resolving the federal claims, the court declined to exercise jurisdiction over the state law claims. The Plaintiffs appealed.

In our opinion reviewing the district court's grant of summary judgment, we reached a split result: we affirmed on the §1983 claims as to the City and the officers in their official capacities, but reversed on the §1983 claim as to the officers in their individual capacities. *See Jones v. City of Atlanta*, 192 F. App'x 894, 895 (11th Cir. 2006). Reversing as to the officers individually, we noted that factual questions remained about "whether the officers [had] acted in self defense" and "within the scope of their discretionary authority when they interacted with [Mr.] Jones." *Id.* at 897–98. Because of those lingering questions, we concluded that—at the summary judgment stage—we could not say for certain either that Mr. Jones' constitutional rights had not been violated or that the officers were due qualified immunity. As a result, we deemed improper summary judgment in favor of the officers individually. *Id.* We decided nothing at all about the merits of the state law claims, instead vacating the district court's dismissal to allow the court to

3

reconsider whether to exercise jurisdiction over those claims on remand. *Id.* at 898.

Upon remand, the district court decided to exercise jurisdiction over the Plaintiffs' state law claims and found that sovereign immunity barred them as to both the City and the officers in their official capacities. It therefore granted summary judgment to the City and the officers officially on those claims. The case then went to trial three times. At the first trial, a jury found in favor of the officers individually on the §1983 claim but could not reach a verdict on the state law negligence claim against them. At the second trial, which dealt only with the negligence claim,[1] the jury deadlocked, so the district court declared a mistrial. At the third trial, the jury, using a special verdict form, found that the officers had been performing discretionary acts during their encounter with Mr. Jones and that they had acted without actual malice. Based on the jury's findings, the court ruled that the officers were due state official immunity and granted their motion for judgment as a matter of law on the negligence claim. That led to the Plaintiffs' second appeal.

## II.

The Plaintiffs' main contention in this appeal is that our earlier opinion held—without restriction and as a matter of law—that "the officers were not acting

---

[1] Before the second trial the district court determined that, by failing to object during the first trial when the court did not charge the jury on any other state law claims, the Plaintiffs had abandoned all such claims except for negligence.

4

in a discretionary capacity when they interacted with Mr. Jones" and therefore "were not entitled to qualified immunity." The Plaintiffs argue that this holding is the "law of the case," which the district court was bound to follow. They assert that the district court erred when it acted inconsistently with the holding by, for example, instructing the juries on state official immunity and granting the officers' motion for judgment as a matter of law based on their entitlement to that immunity.

"We review a district court's ruling on a motion for judgment as a matter of law *de novo*." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). Although a government actor's entitlement to immunity is a question of law for the district court to decide, the court may use a verdict form containing special interrogatories to have the jury resolve "issues of fact that are determinative" of the immunity issue. *Cottrell v. Caldwell*, 85 F.3d 1480, 1487 (11th Cir. 1996). *See also Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002); *Outlaw v. Nasworthy*, 250 Ga. App. 362, 364, 551 S.E.2d 785, 788 (2001). And while the law of the case doctrine, when it applies, bars reconsideration of facts and legal issues decided in an earlier proceeding, its application "'depend[s] considerably on the stage a case has reached when it goes up on appeal . . . .'" *Arthur Pew Constr. Co. v. Lipscomb*, 965 F.2d 1559, 1581 (11th Cir. 1992) (Tjoflat, J., dissenting) (quoting *Barber v. Int'l Bhd. of Boilermakers*, 841 F.2d 1067, 1071 (11th Cir. 1988)). Because the record at the summary judgment stage is often different from, and thinner than, the

5

record after trial, *see Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283–84 (11th Cir. 2005), we are especially careful applying the doctrine "where the previous ruling has been on pre-trial motion, and the subsequent ruling comes after the full development of the case." *Lipscomb*, 965 F.2d at 1581 (Tjoflat, J., dissenting) (quotation marks omitted). "This court has recognized that [our] reversal of a district court's grant of summary judgment . . . says nothing about how the evidence should be viewed after a trial." *Id.* (citing *Shelkofsky v. Broughton*, 388 F.2d 977 (5th Cir. 1968)).

As their arguments show, the Plaintiffs misunderstand our earlier opinion. We did not hold that the officers were acting outside of their discretionary authority as a matter of law. We held only that, on the record as it existed at the time of the Plaintiffs' first appeal, the officers had "not proven that they were acting within" that authority. And we did not hold that the officers were not entitled to immunity under any circumstances. We ruled only that, because of unanswered factual questions, the record did not reflect that the officers were due federal qualified immunity at the summary judgment stage. We did not even consider the Plaintiffs' state law claims or any state official immunity that might have been associated with them.

In our earlier opinion, we said simply this: summary judgment was proper as to the Plaintiffs' § 1983 claims against the City and the officers in their official

6

capacities, but—because genuine issues of material fact remained about whether the officers' had violated Mr. Jones' constitutional rights and whether they were acting within their discretionary authority such that they were due federal qualified immunity—summary judgment was improper (at least on the record as it then existed) as to the § 1983 claims against the officers individually. Certainly, those holdings were the law of the case and bound the district court accordingly. So if, on an unchanged record, the district court had reentered summary judgment on the § 1983 claims for the officers individually because they were acting within their discretionary authority, the Plaintiffs would be absolutely correct that it had erred.

But that is not what the district court did. The court understood from our earlier opinion that jury issues remained as to whether a constitutional violation had occurred and whether the officers had exceeded their discretionary authority, so it submitted those issues to the jury. We told the district court that the facts needed to decide those issues—and the related question of the officers' entitlement to federal qualified immunity—were disputed, so the court asked the jury to settle them. And the jury complied: it found, after the first trial, that the officers had not violated Mr. Jones' constitutional rights, which both resolved the Plaintiffs' § 1983 claim against the officers individually and obviated the need for any further findings or rulings on federal qualified immunity. *See Jordan v. Mosley*, 487 F.3d 1350, 1354–55 (11th Cir. 2007).

7

The jury finished the job when, after the third trial, it found that the officers had acted within their discretionary authority and without malice. The district court then used those findings to decide the final threshold question in the case, whether the officers were due state official immunity. Our earlier opinion gave no particular guidance about how the court should handle the Plaintiffs' state law claims and any related immunity questions, but the method the court chose comports with our opinion nonetheless. Both federal and state immunity inquiries involve factual determinations about the scope of a governmental actor's discretionary authority, *see id.*at 1357, and the court gave the task to the jury for state official immunity as we suggested it should for federal qualified immunity. The court did not err in doing what it decidedly could, *see Cottrell*, 85 F.3d at 1487 (court can submit to jury fact issues determinative of immunity), and impliedly should do.

The district court followed the law of the case when it submitted to the jury contested issues of fact that the officers had not proven as a matter of law at the summary judgment stage. And it acted in line with our earlier opinion when it used the jury's findings of fact to rule as a matter of law that the officers were due state official immunity. As a result, the Plaintiffs' many arguments based upon their misunderstanding of what constitutes the law of this case—which make up the

8

bulk of this appeal—fail.[2]

### III.

Along with their overarching contention about the law of the case doctrine, the Plaintiffs argue that the district court made several evidentiary errors in the third trial. Of these, two assertions merit discussion: that the court erroneously excluded reference to an internal police work rule and that it improperly admitted details about drugs and alcohol in Mr. Jones' blood.[3] Neither decision was reversible error.

### A.

The Plaintiffs contend that the district court was wrong to exclude evidence of work rule 6.09(d), an internal police policy that prohibits officers from shooting at a moving vehicle unless someone in that vehicle is threatening them with non-vehicular deadly force. They argue that, although the Georgia Court of Appeals had earlier invalidated subsection (e) of work rule 6.09, subsection (d) was still valid when Officers Stone and Frye encountered Mr. Jones. Because rule 6.09(d) remained in effect, the Plaintiffs assert that the district court erred when it barred

---

[2] The Plaintiffs' other arguments, based on their erroneous view of how the court resolved the state official immunity issue, also fail. The court did not, as the Plaintiffs assert, allow the jury to decide whether the officers were due immunity, which is without doubt a legal question. Instead, the court allowed the jury to decide the predicate factual issues through special interrogatories, which it is fully permitted to do, *see Cottrell*, 85 F.3d at 1487, and then used the jury's answers to rule that the officers were due immunity as a matter of state law.

[3] The Plaintiffs' other arguments are without merit and warrant no further discussion.

9

them from using that subsection at trial to establish the duty component of their negligence claim.

We see nothing wrong (or reversible) with the district court's decision to exclude work rule 6.09(d). There are two reasons for this conclusion.

As an initial matter, the court's determination that Officers Stone and Frye were due official immunity moots this issue. The Plaintiffs claim that they would have used work rule 6.09(d) to prove that the officers had a duty not to shoot at Mr. Jones' moving vehicle, an element of their state law negligence claim. But because the court—after considering the jury's answers to the special interrogatories— granted the officers' motion for judgment as a matter of law based on immunity, the jury never got to the Plaintiffs' negligence claim. The jury was never asked to consider what duty the officers owed to Mr. Jones, so the fact that it never heard about work rule 6.09(d), which is simply evidence addressing that issue, is not error.

Even if the jury had been asked to consider the Plaintiffs' negligence claim, we would find no reversible error in the district court's decision to exclude rule 6.09(d) for another reason: any error was invited by the Plaintiffs. Invited error occurs "when a party induces or invites the district court into making an error." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (quotation marks omitted). When this happens, we generally will not review the error because a

10

party "should not benefit from introducing error at trial with the intention of creating grounds for reversal on appeal." *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998).

In their response to a motion in limine filed by the officers before the first trial, the Plaintiffs represented to the court that work rule 6.09 "was not in force" when the incident occurred and that they did "not intend to infer [sic] at trial that [the officers] violated this particular work rule." Instead, they sought to introduce the rule "to show that at some point in the past the police department prohibited shooting at a moving vehicle." Seeing no disagreement among the parties about whether rules 6.09(d) and 6.09(e) were in force, the district court granted the officers' motion and excluded both subsections.

Although the Plaintiffs are correct that rule 6.09(d) was still in force when the incident occurred, the district court properly relied on the parties' mistaken but shared assertion that the subsection had been invalidated when the court granted the officers' motion to exclude it. The Plaintiffs are also correct that the court was "misled" about the continuing validity of subsection (d), but they fail to acknowledge that they had a part in the confusion. The truth is, the Plaintiffs invited the court to misunderstand. And having done so, they cannot now "complain that [the court] accepted this invitation." *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010). The court did not commit reversible

11

error in excluding reference to rule 6.09(d).

## B.

The Plaintiffs also contend that the district court erred by admitting evidence that Mr. Jones had drugs and alcohol in his system (along with empty beer cans and drug paraphernalia in his vehicle) at the time of the incident. They argue that those details served no purpose but to impugn Mr. Jones' character and that no "factual nexus" linked the evidence to the officers' defense. We conclude, again for two reasons, that the district court did not reversibly err by admitting this evidence.

First, like the Plaintiffs' rule 6.09(d) argument, this argument is foreclosed by the district court's grant of official immunity to the officers. The Plaintiffs assert that, to use the drug and alcohol evidence, the officers had to show it "contributed in some way to [Mr.] Jones' behavior that is relevant to their defense." But because the special verdict form asked the jury to find the immunity facts before turning to negligence, it never even considered that claim or the officers' defense to it. The jury answered the immunity questions and then stopped, after which the court decided the Plaintiffs' negligence claim as a matter of law. The jury was not asked to resolve the Plaintiffs' negligence claim, so it simply does not matter whether the blood evidence in any way tainted its view of that claim.

12

Second, even if the court's immunity decision had not mooted this issue, we would still conclude that the court did not err in admitting the evidence of drugs and alcohol in Mr. Jones' blood. Although the Plaintiffs contend that "the only use of this evidence is to impugn the character of [Mr.] Jones," we think there is another one: to prove contributory negligence. If the court had decided that the officers were not due official immunity, the jury would have been asked to decide the Plaintiffs' negligence claim. In doing so, it would have been permitted to consider any contributory negligence attributable to Mr. Jones so that it could properly apportion both blame for the incident and liability for the resulting damages. *See Powell v. Berry*, 145 Ga. 696, 89 S.E. 753, 755 (1916). *Cf. Payne v. Joyner*, 197 Ga. App. 527, 528, 399 S.E.2d 83, 84 (1990) (evidence that victim's blood alcohol level was .10 forty-five minutes after accident sufficient to justify contributory negligence jury instruction).

Had the Plaintiffs wished to keep the jury from hearing about the drugs and alcohol in Mr. Jones' blood as it considered the discretionary authority and malice issues, they could have asked the district court to split up the proceedings—to try the immunity questions first before moving on to negligence. Such a request, if granted, would have guaranteed that the jury would weigh the potentially inflammatory evidence only for the negligence claim. But the Plaintiffs did not do that, so any and all evidence relevant to discretionary authority, malice, negligence,

13

and contributory negligence was fair game. The fact that a victim has used drugs or alcohol around the time of his injury is relevant to contributory negligence in Georgia. *See, e.g.*, *Coe v. Carroll & Carroll, Inc.*, 308 Ga. App. 777, 787–88, 709 S.E.2d 324, 334 (2011) (trial court did not err in admitting evidence of victim's methadone use on morning of accident); *Rollestone v. T. Cassirer & Co.*, 3 Ga. App. 161, 59 S.E. 442, 448 (1907) ("The physical state produced by drunkenness is . . . a condition that enters in as one of the circumstances in determining the negligence of the respective parties to the transaction."). As a result, the officers were entitled to submit the blood evidence to support their argument that Mr. Jones was partially to blame for the incident that led to his death. The district court did not err when it admitted that evidence.

## IV.

Because it acted in line with our earlier opinion in this case and committed no reversible evidentiary errors, we affirm the district court's grant of judgment as a matter of law to the officers.

**AFFIRMED.**